**Robert SCULLION**

**v.**

**TRAVELERS HEALTH NETWORK, a corporation, a/k/a Travelers Health Network of Pennsylvania, Inc.**

Civ. A. No. 88–1316.

United States District Court,
W.D. Pennsylvania.

Sept. 27, 1989.

William A. Weiler, Pittsburgh, Pa., for plaintiff.

John D. Newborg, Pittsburgh, Pa., for defendant.

OPINION

COHILL, Chief Judge.

Plaintiff underwent an inpatient hospital admission for substance abuse, but his health insurer, a Health Maintenance Organization (HMO), has refused payment because plaintiff did not attend a treatment facility on the HMO's approved list. Plaintiff sued for the amount of the bill and defendant now moves for summary judgment.

FACTS

There is considerable discrepancy between plaintiff's recollection of events and that of his doctor. Of course for the purpose of defendant's summary judgment

motion, we will take the facts in the light most favorable to plaintiff.

Defendant Travelers is an HMO, providing health insurance coverage through group plans offered to employers. Defendant is in fact the successor to Whitaker Health Services, the HMO plaintiff first enrolled with in June 1986. When Travelers bought Whitaker in November 1986, it adopted the terms and conditions of the Whitaker policy.

An HMO differs from traditional health insurance in one elemental aspect. Rather than paying the bills of doctors or hospitals selected by the patient, an HMO establishes a set payment schedule with various health care providers, and then requires the insured/patient to seek treatment only from these anointed health care providers. In this way, at least in theory, the HMO is able to hold down the costs of health care.

In the present case, plaintiff had determined that he required inpatient treatment for substance abuse. Plaintiff spoke to a local counselor and made a reservation at Cottonwood, a substance abuse treatment center in Arizona. Although there were local substance abuse treatment centers on the HMO's approved list, plaintiff wanted to undergo treatment at a facility outside his home area.

After making these arrangements plaintiff went to see his treating physician, Dr. Klein. In the terminology of the HMO, Dr. Klein was plaintiff's "primary care physician" and plaintiff admits that he knew that under the plan, Dr. Klein had to approve of any medical treatment before the plan would pay for such treatment.

Plaintiff met with Dr. Klein and explained his need for substance abuse treatment and his desire to seek such treatment at Cottonwood. Dr. Klein was supportive of plaintiff's decision.

Plaintiff claims that Dr. Klein approved the treatment plan and that this approval was sufficient to obtain payment from the HMO. As we will see below, this argument is inconsistent with plaintiff's own account of the facts. By plaintiff's account he received neither approval nor disapproval before leaving for Arizona. Despite the lack of prior approval, plaintiff went ahead with his admission to Cottonwood. Upon his return he learned that the HMO refused to pay for his treatment. This suit followed.

## DISCUSSION

At the outset, we note that this matter was removed from the Court of Common Pleas of Allegheny County on the defendant's assertion that plaintiff's claim was governed by ERISA, 29 U.S.C. § 1001 *et seq.*, even though the Complaint did not plead ERISA. After removal, plaintiff was given the opportunity to contest the applicability of ERISA but chose not to challenge it. We have reviewed the Complaint and believe it states ERISA claims. Therefore we analyze this case as one pursuant to 29 U.S.C. § 1132(a)(1)(B).

Under defendant's health insurance policy, all treatment must first be approved by a Primary Care Physician. In plaintiff's case his primary care physician was Dr. Klein.

First of all, we note that plaintiff denies ever having received a handbook or policy describing the plan's requirements. But, no matter. Plaintiff admits knowing that Dr. Klein had to approve treatment before the HMO would pay for it, and plaintiff's drug counselor specifically instructed plaintiff to get Dr. Klein's approval prior to admission.

Plaintiff claims that Dr. Klein orally approved plaintiff's admission to Cottonwood, and though Dr. Klein denies that, plaintiff argues that summary judgment should be denied and the factual dispute submitted to a jury.

Plaintiff argues that even without approval by the HMO's Medical Director, under the plan Dr. Klein as plaintiff's primary care physician could approve plaintiff's admission to Cottonwood and obligate the HMO to pay for it. While this may be true, plaintiff's own description of events makes clear that Dr. Klein left approval to the HMO's main office. While he was supportive of plaintiff's decision, Dr. Klein told

plaintiff he had to check with the Medical Director and get back to plaintiff:

A. [Dr. Klein] was backing me up to go to Cottonwood. If that's where I wanted to go, he would give me approval and *speak with the insurance carrier.* I don't know who he spoke to. I believe at the time it was a Dr. Feranti wasn't in and *he said he would have to get back to me.* He spoke to one of the girls who worked as an employee. I think it was Dr. Feranti who was the medical director for Whittaker and that *he would have to get back to me on that.*

Q. Then you left?

A. Right. I went to work.

Q. Did Dr. Klein get back to you on that?

A. I got back to Dr. Klein.

Q. When you got back to him, what did Dr. Klein tell you?

A. That *they would not approve* for me to go to Cottonwood.

MR. WEILER: Who did you understand him to mean when he said, "they"?

THE WITNESS: Dr. Feranti.

Q. Was that a telephone conversation?

A. No. I was in his office.

(Scullion Depo. p. 59.) (Emphasis added.)

Plaintiff also describes the telephone conversation he had with the HMO's main office:

MR. WEILER: ... This conversation with this girl, was on the telephone, right?

THE WITNESS: Yes, right in Dr. Klein's office.

Q. You are not talking about a conversation you had?

A. Yes. I spoke with her on the telephone.

Q. This was *after Klein said it wasn't approved?*

A. Correct.

Q. Then you called somebody up at Whittaker?

A. He did, and I spoke to the person.

Q. He handed the phone over to you?

A. Correct.

Q. You just had that conversation that you just relayed?

A. Right. It was in his office.

Q. The girl you spoke to didn't approve your going to Cottonwood.

A. *She couldn't give me approval* or disapproval. She was just saying what she knew.

Q. *She was just stating the policy?*

A. *Correct.* That's what she explained to Dr. Klein.

(Scullion Depo. pp. 62–63.) (Emphasis added.)

Thus the facts as described by plaintiff belie his story. Plaintiff admits that Dr. Klein had to check with the Medical Director of the HMO. Dr. Klein later reported to plaintiff that admission to Cottonwood was *not* approved by the HMO. In plaintiff's presence, Dr. Klein called the HMO's main office and spoke to an employee there. Dr. Klein then put plaintiff on the phone and plaintiff was told by the HMO employee that she could neither approve nor disapprove the admission, and that the Medical Director was not in. Despite this, plaintiff went ahead with his admission to Cottonwood.

The events as described by plaintiff himself reveal that, *at best,* plaintiff had received neither approval nor disapproval before his departure for Arizona. The HMO plan requires *prior* approval, and plaintiff admits that he was aware of this requirement. Plaintiff's own testimony defeats his claim and there is no disputed issue of material fact. Summary judgment will therefore be entered in favor of defendant on all claims.